If it pleases the Court, Jonathan Sturman, on behalf of Appellant Haim Attias, on behalf It's an honor and a privilege to be here today. And I'd like to start by stating my intent to reserve two minutes of my time. I understand my obligation to monitor my own time. So I just want to start to clarify a point. In the government's brief, they seem to be characterizing our argument as saying that Mr. for extension that was pending when he filed his adjustment. That's not what we're arguing. I want to clarify that our argument from the district court to the agency is and has always been that even if he failed to maintain his status, he was still eligible for adjustment through the no fault of your own or technical reason exception. So, again, we've always conceded that he was not in lawful status. But the law says that even if you fail to maintain status, you're still eligible if it was a no fault of your own or be a technical reason. And so it would be antithetical to our purpose to argue no fault of your own if we are also arguing he was in status. That exception only actually can ever apply if he failed to maintain status. I mean, if you think about it, how can you argue that your failure to maintain status was through no fault of your own for a technical reason if you were in status the whole time? You've got you've got I mean, there's two things that are that are a little bit troubling to me. The first one is that he waited to the very last possible moment before he filed for an extension. Well, I really don't see the relevance in that. I mean, it's think about it like filing your taxes. Half this country files their taxes on April 15th. They don't get penalized for doing that. Except that, you know, you're going out of out of status the following day or two days or two days later. I mean, that's he certainly could have anticipated this a little better, might have shown a little better faith. The second problem is that the government decides not to give him the extension. So if he doesn't have the extension, then he's then he's out of status. Well, let me address the first point as far as the. And then the order of the order in which everything else occurs and it's sort of interlocking and overlapping. But that it under the way that the that the agency has interpreted this, it doesn't it no longer matters. He was he was out of he was out of status. And that's sort of the end of it. All right. Well, there's a lot to unpack there. A lot to unpack. I'll address the first part going back to the timing. Look, you have to understand the circumstances. He came to the United States on a B1 business visa to invest in a company. Start a company and get the company up and running so it could be running smoothly without his intervention. And he filed for an extension so he could get more time to do that. And it was approved and he was trying to get it up and running. But it was still needed work. So he filed the second extension, which is what was the delay was. And now can you repeat the second part of the question? The second part of the question is the problem is that irrespective of when he applied for it, it was it was turned down. So he at that point, he's out of he's out of status. Well, that goes back to what my initial point was. This exception only would ever apply if he was turned down. The the same regulatory framework says if it was approved, then he was in status the whole time. If he's in status the whole time, then we don't need to even get into the technical fault of your own. Well, if an application, for example, might be lost for a while, it might be might be lost for two or three months. And then we and then we find it. So, well, you went out of status in the meantime. But this is our fault. We we stuck it back here behind the filing cabinet and lost track of it. Well, I think, you know, at this then you're conflating no fault of your own technical reason. It doesn't say anything about the final outcome. And their own policy manual says the very part of the policy manual that they included in the records says that if the extension is still pending, when you're determining the no fault of your own status, if the extension is still pending and you find they're eligible under the no fault of your own, just close the extension that's pending. So that's important. It shows that not only is the final outcome of the extension not dispositive, but it's also not even necessary to the determination of this exception. And this exception, again, it would never there'd be no factual scenarios where this exception applies. I mean, the law says it applies where you at the time of filing your adjustment, you filed a timely extension and the service had not yet acted on that. So it says nothing about the final outcome. And you would have to add language in only if it's approved. And all we're asking the court is to look just at the plain language of the law. You know, this court has said that just as we cannot legislate from the bench, the executive cannot legislate from the Oval Office. And what they're doing here is trying to add requirements. It's a good turn of phrase. Yeah, I don't think it could have been put better than anyone. Glad I scored some brownie points. But look, that's really what they're doing here. You know, they're trying to add language that's not found in there. And by doing so, it essentially erases this whole language from the regulation. There really is no scenario where this would apply if it depends on the final outcome. Like I said, if it's approved, then the no fault of your own section just doesn't come into play. Because then they've been in status the whole time. And they even said that in their brief, that where the extension is ultimately approved, page 8 of their brief, I believe, or 9. So where the extension does get approved, the applicant is considered never to have fallen out of status. So then they're eligible for adjustment. There's no question of the no fault of your own or technical reason exception. Does subparagraph K play any role in the analysis here? Or is it just focused on C2? Well, I think that was a point of confusion. I don't think it plays a part in the analysis. It does generally. So how it works is subsection C, the no fault of your own exception or technical reason exception, that applies to every applicant for adjustment of status. Whether it's family-based, asylum, employment-based. And then subsection K is an additional exception. There's other exceptions in that same statute. But subsection K only applies to employment-based applications. So under the employment-based application, the process where they're out of status, it's first you go to K and say, well, if they're out of status, was it 180 days or less? If so, then they're eligible. If not, then you go to, well, was it no fault of their own or technical reason? And I would direct the court's attention in that matter to the portion of my brief discussing Alamorty, which really, Judge Preggerson really cleanly lays out the interplay between the no fault of your own and subsection K. And describes it as an extra layer of protection for employment-based applications. His request for an extension was pending for an unusually long period of time, wasn't it? Yes, the normal processing times as of right now, I don't know what they were then, are two and a half to four and a half months. And this was pending for about 16 months. And so it left Mr. Attias in a place of uncertainty. Was he prejudiced by that? Would things have been different in any respect if they had ruled within three or four months? Yes, so if, I mean, there's obviously two outcomes that could have happened if they adjudicated it within that timeframe. Either they approved him and then, we're not here, he maintained status. Or he could have decided to leave the country and then just apply for the visa, the immigrant visa through consular processing without any sort of harm. But he was relying on the plain language of the regulation, which says, this is the rule. These are the facts where the rule applies. And those facts described his case. So he was kind of left in limbo because it took them nine months to adjudicate. Let's suppose he had anticipated 60 days in advance of the expiration of his visa that he was likely to need to be able to stay and had applied and said, look, I'm going out of status on April 1st. I'm going to need an extension. I'll be applying for LPR status as well. If he had done that and they had timely denied the extension, you wouldn't be here, right? Well, let me address, because some of the facts there are not exactly correct. So he applied for that first extension. They didn't approve that till March 8th. He didn't, you know, with the post, it took another 10 days to get the notice. So it was already pretty close to the beginning of April by the time he even got the fact that his extension, first extension was applied. So he really didn't have a lot of time to file for the second. You know, he has to go to the attorney, attorney's time, prepare, then there's additional post time to get it to the immigration service. So you can't file extension on top of extension. Now, could you repeat the second part of- Well, let's suppose, I mean, I'm sort of not concerned about a first extension versus a second extension. The point is, let's suppose he applies in plenty of time. It's a generous amount of time for the agency to decide this question. It's not a last minute sort of rush. And in the ordinary course of things, the extension is denied. Now, isn't he just out of status? And isn't it, aren't we just over? Isn't the case just over if the extension is denied? He's then out of status. If it had been denied prior to the filing of the adjustment of status? Well, yes, but then we wouldn't be here arguing that it was through no fault of his own. In that case, he would have had certainty as to his status and would have been able to make a decision based on the timely adjudication as to which route to take. And he, like I said, he could have just left the country and applied for the visa then. Okay, so let's change it. He applies in plenty of time for the extension and he has to file the application before he gets the adjudication on the extension. And then the extension is denied. Oh, well, let's, if he applied plenty of time before the expiration of his status. But it's not denied until after he files his application. So you're saying, I just want to clarify, you're saying that if he had filed the extension well ahead of his expiration and then after his, while that was pending, but his status expired, then he filed for the adjustment and then it's denied. Well, I mean, I think we'd still be, that's exactly where we are here. Look, every court that's looked at this regulation has said these four scenarios defined under the regulation by themselves, just limiting it to four is unlawful and impermissibly narrow as contrary to Congress's intent that this is an equitable provision. And now we're not arguing that, we're not arguing, we agree with those courts, but we're not, we don't even need to make that argument. He falls under the plain language of one of those regulatory criteria. I mean, it says, if it's pending at the time it's filed, he was relying on that language of the law to make his decision. He could not have filed his extension earlier, Your Honor. Right, but doesn't it depend on the government's decision to grant him the extension? Well, every court that's looked at it, has not focused at all on the final outcome. I mean, their policy manual says, as long as it's non-frivolous and meritorious in fact, those phrases when read together have actually been interpreted in multiple immigration context by the Board of Immigration Appeals and precedent decisions. In matter of but has a very lengthy statement. It says it does not need to be approved. It just meritorious in fact with non-frivolous does not mean approved. It has to be approved. It means that it could have been approved. And here, he filed an extension on the same basis as the first extension, which was approved. So, you know, the problem with this is that that was never adjudicated. Yeah, I will. I just want to make another point. The problem with that is that if that's the standard meritorious in fact and non-frivolous, that was never considered at the agency level. There was never a finding of frivolity. There was never even a consideration of whether it was meritorious. What's your best case for the proposition that the government's got the wrong interpretation of the statute or the regulation? Well, Alamorty, Mart versus Beeb, matter of LK, which is Chevron deference agency precedent. But the best one dealing with this particular statute would be Alamorty. No, and matter of LK deals with this quite well. It says that once DHS has acted on the pending application, the technical reason ceases to exist, which necessarily implies that there is a technical reason until they act. And so here the question is, when he filed his adjustment, was there a technical reason? And all I'm asking your honors to do is to not let them add requirements beyond the objective criteria of the regulation. And I'm just asking you to look at the language of the law as it's written. If there's no further questions, I'll reserve the remainder of my time. May I please the court, Elizabeth Kerlin, on behalf of Defendant Appeles. Your honor, the district court properly determined that USCIS's decision to deny plaintiff's adjustment application pursuant to 1225 C2 for failure to maintain continuous lawful status during his time in the U.S. was based on a proper interpretation of the relevant statute and regulation. In this case, the agency correctly concluded that plaintiff did not qualify for the exculpatory provision in 1255 C2 that would excuse his failure to maintain lawful status due to no fault of his own or for technical reasons. This is because the agency's regulation at 245.1 D2 II interprets a technical violation as requiring that agency inaction be the but-for cause of plaintiff's failure to maintain continuous lawful status. Put differently, plaintiff can only benefit from this regulation if he filed an application to extend his non-immigrant status that was meritorious in fact. Here, because plaintiff's I-539 application to extend his B1 status was ultimately denied by USCIS, the nine-month period from April 2, 2016 when his B1 status expired until January 26, 2017 when he filed his adjustment application is considered a failure to maintain lawful status. USCIS's interpretation of the exculpatory provision and what a technical violation is is contextual because it has to take into account the meaning of unlawful status. And in the regulation at 245.1 D1 II, it defines unlawful status for those who are applying to extend their non-immigrant status. It defines that period as only becoming lawful once their application is approved. So if the application is approved, then the view is that they were in fact in unlawful status during the period that it was pending. And then when it's later approved, they are then in lawful status and the unlawful status in the interim is excused? Or is it that once it's granted, it's viewed that they were always in lawful status? Yes, Your Honor. The second scenario is what applies because it's the view that when an individual is applying to extend his status, the time from when his current status, his non-immigrant status we're talking about, the time when his current non-immigrant status expires, then the very next day, that period while his extension is being adjudicated, that is not considered lawful status. That period of time only becomes lawful once the agency approves the request for the time. Because the agency approves the request, they don't deem him to have been in unlawful status during that time. But then that kind of goes to his point. Well, then when does this ever apply? Because the exception is an exception to being in unlawful status. And so if the technical reason, if the subsequent approval of the application means you were always in lawful status, then the technical reason actually never applied because it's an excuse on the face of the statute. It's an excuse from being in unlawful status. I think the way that I view, the way the agency views the consideration of the reason why it has to read, it has to interpret the technical violation to be a contextual term. And that it has to include considerations of what it means to be in unlawful, what it means to be in that unlawful status period. And it has to include the idea that an application extension, a non-immigrant status application has to be meritorious, in fact, is because when having agency in action, agency in action has to be the but for cause of that. Because if an individual, just like let's take his example, if an individual is, applies for, if an individual applies to extend his status and his status before, the day before his current status expires. In this case, he asked for an extension of his B2 status. That can only be extended until for six months and a year, a full, you can only be in B1 status for an entire year. I'm sorry, I meant B1. If he had actually, if the agency had actually adjudicated his application within three months, instead of issuing a request for further evidence, because it questioned whether he had non-immigrant intent appropriate for that type of visa. Instead, let's say the agency approved it. It could only have approved his status until October, six months from April is October. So then what would have happened between October and the time that he filed his adjustment application in January? He would have been in unlawful status under that. He might've done something else. We just don't know because he sat on the application for 16 months. I wanted to ask about the regulation because the regulation says that through no fault of his or her owner for technical reasons applies. And it says a technical violation resulting from inaction of the service. As for example, where an applicant establishes that he or she properly filed a timely request to maintain status and the service has not yet acted on that request. That's exactly his situation. And, but hear me out. This is why I'm troubled by your answer before that if they approve it, they're always in lawful status because then this never applies. This says that the technical exception from unlawful status applies when applications are pending. And under your view of things, it never applies in any case because if we grant the application, they were always in lawful and so they don't need the technical exceptions. That's where I'm having trouble understanding this. The technical exception, the technical violation, the way that the reg explains it is that it says, and the way that the agency interprets it as the district court recognized in its decision, the example that is provided as when an individual files in parentheses, that the regulation provides for an example, the agency provides for an example. That doesn't preclude the situation of the reading of having agency in action be the but-for cause. Meaning if his situation is not entirely accurate because when reading a but, the agency in action is a but-for cause, would make an individual situation who status expired while they were, while their adjustment, their extension application is pending, mean that if they, if once it gets approved, it gets approved only during the period of time that the non-immigrant, that they're eligible for under that non-immigrant status. So that presume, that accounts for the situation where an individual has filed a timely application. They then file for adjustment of status, but then their application ultimately gets approved by the service. Then the agency in action during the time when this, whether it's three days or whether it's three months, if they get their application approved, it gets approved for the period of time that they're eligible for. It's not that it gets, it's not that the service action itself in approving the application grants that whole period of time. It's what they're eligible for under the non-immigrant status. So in reading the agency in action as being a but-for, it accounts for the situation of whether, of when they are out of status, but they're out of status for the time period that their extension request ultimately gets approved for. And it's just the lack of agency action in acting upon that application during the time period when they had gone out of status, during that brief time period between that and the adjustment application. That would be the situation where it's a technical violation. It's the agency action that caused it. Now, it also accounts for the period, for the situation of if they had filed it and the agency had acted, it had acted within the time frame, but it had denied it, it is possible that at that point the agency in action resulted in their being out of status, but that at that point, it presumes that they would leave the country and that they would seek some way to, there's no guarantee that they would leave the country. So under that circumstance, that wouldn't be agency inaction that caused a lack of status because the agency acted in time, let's say, but they just chose not to leave the country. So that's why it's a little bit dense and it's complicated because the way the agency has interpreted textual violation as set out in the regulation and in its interpretation of that in the Newfield memo that's been in existence since 2008, and in the policy manual that controls all of the adjudications of adjustment of status applications and considerations of lawful status for purposes of qualifying for adjustment of status. It has, the agency interprets that in a contextual manner because it has to take into account all the various permutations of what it means for an individual to be in lawful status and what that period of time from when their current status, non-immigrant status aspires to when they get, when the agency acts upon it and approves it. It has to take into account that the definition, the other definitions of what lawful status means and that's what the district court recognized when it said that the agency interpretation of this regulation and agency and inaction having to be the but-for cause of a technical violation is the most reasonable and what controls under the circumstances of this case. And it's important to also that I wanted to clarify that again, his situation is an example of why the agency needed to say that technical violation has to be caused by the agency inaction and that there not be any other issue. Because again, if they had approved, he, when he filed his extension request, three months later in July, the agency issued a request for additional evidence and that was because they were concerned whether, about whether he was eligible for this status, whether he had non-immigrant intent and he responded to that in August. So he had noticed that there was potentially a problem with his extension application. So even, and yet he did not do anything for nine months and then filed his adjustment application. But even if the agency had acted on his extension, his non-immigrant extension, he would have only gotten that status until October. And so the unlawful status period would still exist from October to January. And that's why, for situations like plaintiffs, that's why the agency interprets the technical violation to be a contextual issue. And if the court doesn't have any further questions, I'd like to just close with saying that the court should affirm the district court's determination that USCIS properly denied his adjustment application. Thank you, counsel. Give him a minute on the clock. Thank you, your honor. First of all, meritorious in fact. If that is the standard, the scope of review under the APA is the decision articulated by the agency at the time of decision making. That was never raised by the district court, never during the administrative process. The first time that was raised was by the court, this court, by Judge Dolly Gee. This court has said that the courts may not supply a basis of denial not articulated by the, not articulated by the agency itself. And you're referring to which specific point? The meritorious in fact that is in the policy manual. That appears nowhere whatsoever in the administrative record at the agency adjudicative level. So that would have been a live issue that was never addressed. Second, their position for sole cause, it's the same thing. They never argued that at the agency level or before the district court. That was supplied by the judge. That's not an agency interpretation. It doesn't say but for in the policy manual. So I'll close by just asking this court to look at the plain language of the regulation. Thank you, counsel. The case just argued will be submitted.
judges: Bybee, Moskowitz, Collins